WHITNEY v DAY

Docket No. 78-750. Submitted January 2, 1980, at Lansing.—Decided
    October 10, 1980. Leave to appeal applied for.

Plaintiffs, Robert W. and Martha M. Whitney, brought an action
    against the board of managers of Flint's Hurley Hospital, Dr. J.
    Murray Day and other, unknown physicians and hospital per-
    sonnel alleging medical malpractice. The Genesee Circuit
    Court, Earl E. Borradaile, J., entered judgment on a jury
    verdict of no cause of action. Plaintiffs appeal alleging several
    errors and defendant board of managers of Flint's Hurley
    Hospital cross-appeals. An unpublished opinion was released on
    April 21, 1980. Subsequently, the Court of Appeals granted an
    application for rehearing. Following rehearing, another opinion
    was released. *Held:*

    1. A jury instruction in a negligence action against a nurse
    anesthetist defining nursing negligence as "failure to apply
    that degree of skill and learning in treating and nursing a
    patient which is customarily applied in treating or caring for
    the sick or wounded who are suffering in the same community"
    states the proper standard of care applicable.

    2. The entire testimony of a witness need not be read back to
    the jury when a jury makes a request for a reading of a
    witness's testimony. Both the reading and extent of the reading
    are a matter confined to the sound discretion of the trial judge.

    3. The trial court did not abuse its discretion in precluding
    the calling as a witness of a doctor not listed as a witness as
    required by a local court rule where the party could have
    ascertained the name of the doctor but did not and listed only
    "unnamed agents of the hospital".

    4. Failure of a party to object to allegedly erroneous jury
    instructions fails to preserve the issue for appeal.

    Affirmed.

REFERENCES FOR POINTS IN HEADNOTES
[1] 57 Am Jur 2d, Negligence § 76.
[2] 76 Am Jur 2d, Trial §§ 1041, 1043.
[3] 81 Am Jur 2d, Witnesses § 74.
[4] 5 Am Jur 2d, Appeal and Error § 891.

1. NEGLIGENCE — NURSES — STANDARD OF CARE — INSTRUCTIONS TO JURY.

    A jury instruction in a negligence action against a nurse anesthetist defining nursing negligence as "failure to apply that degree of skill and learning in treating and nursing a patient which is customarily applied in treating or caring for the sick or wounded who are suffering in the same community" states the proper standard of care applicable.

2. TRIAL — TESTIMONY — READING TO JURY — DISCRETION.

    The entire testimony of a witness need not be read back to the jury when a jury makes a request for a reading of a witness's testimony; both the reading and extent of the reading are a matter confined to the sound discretion of the trial judge.

3. WITNESSES — LISTING OF WITNESSES — LOCAL COURT RULES.

    A trial court did not abuse its discretion in precluding the calling as a witness of a doctor not listed as a witness as required by a local court rule where the party could have ascertained the name of the doctor but did not and listed only "unnamed agents of the hospital".

4. APPEAL — JURY INSTRUCTIONS — PRESERVING QUESTION.

    The Court of Appeals will not review possible errors in jury instructions raised for the first time on appeal.

*Ripple, Chambers & Steiner, P.C.,* for plaintiff.

*Wilson, Portnoy, Basso & Leader, P.C.* (by *Robert P. Roth),* for Board of Managers of Flint's Hurley Hospital.

*Cline, Cline & Griffin,* for defendant Day.

Before: DANHOF, C.J., and ALLEN and MAC-KENZIE, JJ.

MACKENZIE, J. On January 10, 1974, plaintiffs filed a complaint in Genesee County Circuit Court, alleging that plaintiff Robert M. Whitney had suffered injury due to the medical malpractice of defendants Dr. J. Murray Day and certain unnamed Hurley Hospital employees. After comple-

tion of trial in Genesee County Circuit Court, the jury returned a verdict of no cause of action against the defendants. Plaintiffs now appeal as of right.

At trial, the testimony indicated that plaintiff Robert Whitney had been a patient of defendant Day in 1961, when plaintiff was surgically treated for a disc problem at the L-4,5 level of his spine. In 1971, following ten years of good health, plaintiff returned to Dr. Day with renewed back pain after suffering a fall while bowling. At this point, defendant Day performed a myelogram on plaintiff which involved the injection of radioactive dye in the spinal column which, on an x-ray, would pinpoint disc problems. The myelogram performed in 1961 showed a block at L-4,5. A myelogram performed November 23, 1971, showed an extradural block at the L-3,4 level due to a herniated nucleus pulposus. On November 24, 1971, surgery was performed and a ruptured disc was removed from the L-4,5 level. After this operation, a partial success was effected, but plaintiff still complained of pain and numbness in his lower extremeties.

A third myelogram was performed and a small defect was found at the L-3,4 level. Consequently, plaintiff agreed to a third operation. However, this operation did not occur as scheduled because a cardiac irregularity was found once plaintiff was taken to the operating room. After a cardiac specialist was called in to correct the problem, plaintiff was cleared for surgery.

On January 18, 1972, plaintiff was taken to the operating room. Anesthesia was administered by a nurse anesthetist, and Dr. Day had just begun performing the operation when plaintiff suffered a cardiac arrest. After plaintiff's heart was resuscitated, the incision was closed without completing

the operation and plaintiff was placed in intensive care. The cardiac problems plaintiff suffered led Dr. Day to advise the plaintiff that he could not and would not again operate, absent a life or death situation. Consequently, plaintiff continues to suffer pain and numbness in his lower back and legs; he cannot walk without artifical support; he has not been able to resume working.

At trial, plaintiffs essentially claimed that defendant Day was negligent in not removing the L-3,4 defect when he operated on the L-4,5 defect. Plaintiffs further claimed negligence on the part of the hospital, because the anesthesia was administered by a nurse anesthetist rather than a physician specializing in anesthesiology.

On appeal, plaintiffs first contend that the trial court gave an erroneous instruction concerning the standard of care of a nurse anesthetist. In its instructions to the jury, the trial court stated as follows:

"In many cases, anesthetics are administered by nurses. Nursing negligence is defined as 'failure to apply that degree of skill and learning in treating and nursing a patient which is customarily applied in treating or caring for the sick or wounded who are suffering in the same community.' A nurse administering an anesthetic is held to the standard of care based on the skill and care normally expected of those with the same education and training."

Plaintiffs allege that the instruction constituted a malpractice instruction, and thus violated the Michigan Supreme Court holding in *Kambas v St Joseph's Mercy Hospital of Detroit,* 389 Mich 249; 205 NW2d 431 (1973). In *Kambas,* the Court held that nurses may not be sued for malpractice, and, consequently, the two-year statute of limitations

for malpractice was inapplicable to actions alleging negligence on the part of a nurse. The Court based its decision on the holding in *Richardson v Doe,* 176 Ohio St 370; 199 NE2d 878 (1964). According to the *Richardson* court:

"There is no compelling reason for a nurse to be given the protection of a one-year statute of limitations. A nurse, although obviously skilled and well trained, is not in the same category as a physician who is required to exercise his independent judgment on matters which may mean the difference between life and death. A nurse is not authorized to practice medicine. Section 4723.33, Revised Code. Her primary function is to observe and record the symptoms and reactions of patients. A nurse is not permitted to exercise judgment in diagnosing or treating any symptoms which the patient develops. Her duty is to report them to the physician. Any treatment or medication must be prescribed by a licensed physician." 176 Ohio St 370, 373.

We are unable to conclude that the instruction given by the trial court in the instant case is erroneous under *Kambas.* The standard of care set forth by the trial court was taken verbatim from 8 Am Jur Proof of Facts 2d, Anesthetist Supervision and Control, § 2, p 592. As noted by the trial court, a nurse anesthetist possesses greater qualifications than an ordinary nurse. Nurse anesthetists are licensed as nurses, and then they are certified after an 18-month period of study in their specialty. Thus, they are professionals who have expertise in an area which is akin to the practice of medicine. Because a nurse anesthetist possesses responsibilities greater than those possessed by an ordinary nurse, and because those responsibilities lie in an area of expertise in which some physicians receive full residency training, we conclude that it was not error for the trial court to set forth

a standard which examines the treatment given "in the same community".

It is noted that in response to *Kambas,* the Legislature amended MCL 600.5838; MSA 27A.5838, so that the malpractice statute of limitations, and as a consequence, malpractice actions, are applicable to nurses effective July 9, 1975. Thus, the plaintiffs' reliance on *Kambas* is misplaced.

Plaintiffs next contend that the trial judge erred when, in response to a jury request, he read to the jury only certain portions of defendant Day's testimony. We conclude this argument lacks merit.

As a general rule, when a jury requests that testimony be read back to it, both the reading and the extent of the reading are matters within the sound discretion of the trial judge. *People v Howe,* 392 Mich 670, 675; 221 NW2d 350 (1974). The trial court is not obliged to reread a witness's entire testimony. *People v Burks,* 48 Mich App 484, 487; 210 NW2d 495 (1973). In the instant case, the trial court did not abuse its discretion in failing to read certain portions of defendant Day's testimony. The portions of the testimony which were read adequately summarized Day's explanation of why he failed to remove the L-3,4 defect when he removed the L-4,5 defect from the plaintiff's spine.

Plaintiffs next argue that the trial court erred when it told the jury that there had been no testimony on the definitions of "incise" and "excise". We disagree that error occurred. Although the record contains layman's references to the term "excise", there was no specific question as to medical definitions of "incise" or "excise". Absent such definitions, we are unable to conclude that the court's refusal to use the definitions designated by plaintiffs' counsel was reversible error.

Plaintiffs next contend that the trial court improperly precluded them from calling a Dr. Ojeda as a witness. We disagree.

According to Rule 8.5 of the Local Court Rules for the 7th Judicial Circuit, Genesee County, Michigan, each party must submit a list of all witnesses known to the party or its attorney having knowledge of the facts of a case irrespective of whether they are expected to testify. Failure to include all known witnesses operates to bar their testimony at trial, except for good cause shown. Dr. Ojeda was not listed as a witness.

Initially, we note that the fact that plaintiffs listed "unnamed agents of the hospital" on the witness list did not meet the requirement of Rule 8.5. Hundreds of agents are employed by the hospital and thus the defendants are not put on notice as to which agents will be called at trial.

The trial court held that plaintiffs had an opportunity in 1975 to ascertain the identity of Dr. Ojeda, but failed to do so. It therefore appears that plaintiffs were unable to establish good cause for failing to list the witness. The trial court also noted that the testimony of the witness was of little importance to the case. We are unable to conclude that the trial judge's ruling was an abuse of discretion.

Plaintiffs lastly contend that the trial court improperly instructed the jury that if it found that the hospital's nurses were negligent, it "may" find the hospital liable. Plaintiffs failed to object at trial, however, and therefore this issue has not been preserved for appeal. See *Lamb v Oakwood Hospital Corp,* 41 Mich App 287, 289; 200 NW2d 88 (1972).

Affirmed. Costs to defendants-appellees.